UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **VT HALTER MARINE, INC.** | * | **PLAINTIFF** |
| | * | |
| **VERSUS** | * | **CIVIL ACTION NO. 11-250-HSO-RHW** |
| | * | |
| **WARTSILA NORTH AMERICA, INC.** | * | **DEFENDANT** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FIRST AMENDED COMPLAINT**

NOW COMES plaintiff, VT Halter Marine, Inc., through undersigned counsel, and for its Complaint against defendant, Wartsila North America, Inc., respectfully avers as follows:

1.

Plaintiff, VT Halter Marine, Inc. ("VTHM"), is Delaware corporation with its principal place of business in Pascagoula, Mississippi.

2.

Defendant, Wartsila North America, Inc. ("Wartsila") is a Maryland corporation, authorized to do business in the State of Mississippi.

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and the parties are of diverse citizenship.

4.

This Court has personal jurisdiction over Wartsila, which is authorized to do business in Mississippi and has purposefully availed itself of the benefits and the laws of this State.

5.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 inasmuch as Wartsila resides in the district and a substantial part of the events giving rise to the damages claimed herein occurred in this district.

6.

On August 29, 2006, Vessel Management Services, Inc. ("Vessel Management"), entered into a contract with VTHM to construct four ocean tugs and four ATB barges. Under the terms of that contract Vessel Management was to supply various components of the vessels including the main engines, shaft, hub and blades ("owner-furnished components"). VTHM was to receive and store those owner-furnished components at its Moss Point, MS shipyard pending installation in the vessels. One of the four tugs was assigned Hull No. 1981 and was named the PRIDE.

7.

Vessel Management purchased the shaft/hub assembly for the PRIDE from Wartsila, and on or about March 3, 2009, Wartsila delivered the shaft/hub assembly to VTHM at its Moss Point facility to be stored prior to installation in the PRIDE.

8.

A Wartsila technician supervised VTHM's installation of the shaft/hub assembly in the PRIDE.

9.

Prior to making the final connections between the components of the hydraulic system that actuates the variable pitch of the propellors, the piping between those components, which was installed by VTHM, was flushed and tested. VTHM subjected samples of the oil used in the

PRIDE's controllable pitch propeller ("CPP") system to laboratory analysis, with the results meeting the standards adopted by Wartsila.

10.

The PRIDE was completed in June of 2009 and underwent dock trials afloat on June 25, 2009, which consisted of running the vessel at various settings.

11.

During the dock trials, the tug experienced variable pitch propeller problems when the port CCP system inexplicably went full ahead as the blades reached a pitch of 120º.

12.

Wartsila's technicians on the scene checked the system, but were unable to find an explanation for this phenomenon.

13.

On July 24, 2009 the PRIDE underwent a bollard pull test. During the test, Wartsila technicians observed that the port CCP system was "relaxing" the pitch, that is, when the controls were set at full ahead, the blades nevertheless slowly returned to the zero or neutral position, causing the vessel to lose forward propulsion, even though full ahead.

14.

Wartsila technicians thoroughly checked the system but were again unable to identify the problem.

15.

On July 28, 2009, the PRIDE underwent sea trials, and the loss of pitch in the port CCP continued.

16.

On July 29, 2009, Wartsila technicians used the emergency pitch tool to manually set the pitch to determine if there was an internal leak in the shaft/hub assembly, and they determined that there was indeed an internal leak.

17.

On August 1, 2009, the PRIDE was drydocked for propeller blade repairs and to perform a more thorough investigation into the pitch problems experienced by the CCP. The shaft/hub assembly was removed and sent to Wartsila's facility in Houston for a joint inspection by Wartsila, VTHM and Vessel Management personnel, surveyors and/or consultants.

18.

On August 5, 2009, Wartsila, without waiting for VTHM's or Vessel Management's representatives and hence in violation of the agreement to conduct a joint inspection, uncoupled the shaft/hub assembly and found a large gouge on the stern end of the shaft spigot where it enters the hub yoke. A corresponding gouge was found on the interior surface of the yoke.

19.

The gouge inside the shaft/hub assembly crossed an O-ring seal on the shaft, causing the loss of sealing function, which resulted in the leakage of hydraulic fluid and loss of pitch.

20.

The gouging of the shaft/hub assembly was a defect created during the manufacturing process, in particular, when the hub was mounted onto the shaft at Wartsila's facility.

21.

Before Vessel Management's and VTHM's representatives had arrived, Wartsila's Leo Van Mil, Joel Short, Karl Russell, and/or Arthur Hall claimed to have discovered pieces of welding slag and blasting grit when the hub was removed from the shaft and represented to Vessel Management's Jon Smith and/or Scott Phillips that the presence of the contaminants, which were allegedly discovered while no other party was present, was the result of VTHM's improper flushing of the hydraulic system.

22.

Vessel Management, in light of Wartsila's representation that VTHM's improper flushing of the hydraulic system was the source of the contaminants, demanded that VTHM furnish a new shaft/hub assembly for the PRIDE at VTHM's cost, even though the shaft/hub assembly was owner-furnished equipment.

23.

VTHM was strongly of the view that Wartsila's manufacturing error was the cause of the internal hub damage and not due to any negligence or improper flushing of the system by VTHM.  VTHM nevertheless relented and agreed to supply a new shaft/hub assembly at its expense based on the twofold consideration that (1) engaging in a lengthy dispute with Vessel Management would have subjected VTHM to a prohibitively costly liquidated damage claim for late delivery of the PRIDE, and (2) the contract with Vessel Management specified that VTHM must use new parts unless Vessel Management approved the use of used or repaired ones.

24.

On October 1, 2009, Wartsila's Houston representative, knowing that VTHM needed a new shaft/hub assembly, submitted a quote for $178,278.53 in a document that stated in the subject line "Hub and Shaft Price Quote."

25.

On December 10, 2009, VTHM submitted to Wartsila purchase order # VC26434 that repeated the information on the October 1, 2009 quote.

26.

On April 6, 2010, Wartsila advised VTHM that the part that had been ordered on December 10, 2009 was just a shaft and did not include the hub.

27.

On April 16, 2010, Wartsila presented a quote to VTHM in the sum of $376,000 for "one (1) complete port side hub assembly" and "one (1) complete port side shaft assembly."

28.

On April 21, 2010, Wartsila sent another quote identical to the one of April 16th except that the expiration date was April 26th and the price was reduced to $367,970 to reflect elimination of some odd parts.

29.

On April 23, 2010, VTHM's Hank Stewart wrote to Wartsila submitting purchase order No. VC26940 for a new port side shaft and hub assembly. The cover letter stated that the order was "under protest," explaining that it "was fully understood by all parties that we required a

complete Port Side shaft-line assembly (shaft and hub, including all internals and hardware) to replace the one damaged last year on the Tug Pride."

30.

On April 26, 2010, Wartsila wrote to VTHM, advising that Wartsila had not issued an invoice for shaft and hub because VTHM's purchase order was issued under protest. VTHM replied, stating that the protest was based upon VTHM's concern that (1) the need to reorder was "due to being misled by [Wartsila's] Paul Glandt" and (2) "the 189 grand increase over what we were assured by Paul last December was the correct pricing for the parts."

31.

Because VTHM was under pressure to timely deliver hull #1983 on June 15, 2010 in order to avoid liquidated damages under the terms of its contract with Vessel Management, VTHM reissued the purchase order for the replacement shaft and hub assembly on April 28, 2010 without the original cover letter protesting the situation. If VTHM had drawn a line in the sand and refused to furnish a new replacement shaft/hub assembly, extensive delays in construction likely would have ensued as Vessel Management and VTHM litigated the dispute. Because of Wartsila's false assertion that VTHM was to blame for what was actually a manufacturing defect, VTHM had no choice but to order a replacement shaft/hub assembly.

32.

VTHM did in fact pay to Wartsila the amounts invoiced for the replacement shaft/hub assembly, and the total additional cost to VTHM as a result of the defective shaft/hub assembly was $461,844.47.

**Tortious Interference With Contractual Relations**

33.

By falsely representing to Vessel Management that VTHM was the cause of the internal gouging of the shaft/hub assembly, Wartsila committed tortious interference with VTHM's contractual relationship with Vessel Management.

34.

Wartsila was aware that it would directly benefit from VTHM's having to purchase a replacement shaft/hub assembly, and Wartsila's willful act of misinforming Vessel Management of the cause of the damage to shaft/hub assembly resulted in VTHM's loss in the amount of $461,844.47.

35.

This action is brought by VTHM individually and on behalf of all other parties having an interest in the claim as their respective interests may ultimately appear, including VTHM's subrogated underwriters subscribing to policy number HNW 00040 2009:  National Liability & Fire Insurance Co., Liberty Mutual Insurance Co., Indemnity Insurance Company of North America, Valiant Insurance Company, OneBeacon Insurance Company, and XL Marine & Offshore.

**Breach of Warranty**

36.

Under the terms of the contract pursuant to which Wartsila sold and Vessel Management purchased the defective shaft/hub assembly, Wartsila warranted that it would repair or replace

"any defect in the Parts which appears during the warranty period as a result of defective material or manufacturing."

37.

Despite discovering the manufacturing defect in the shaft/hub assembly during the warranty period, Wartsila did not replace the defective item until VTHM ordered a replacement on Vessel Management's behalf.

38.

VTHM is therefore legally subrogated to Vessel Management's right under the warranty to recover the cost of the replacement shaft/hub assembly from Wartsila.

39.

All and singular, the matters alleged herein are true and correct.  Plaintiff reserves the right to amend this First Amended Complaint as further facts become available.

WHEREFORE, plaintiff VT Halter Marine, Inc. prays that defendant Wartsila North America, Inc. be served with a copy of this Complaint and summons;

- A. That judgment be entered in favor of plaintiff VT Halter Marine, Inc. and against defendant Wartsila North America, Inc.;
- B. That VT Halter Marine, Inc. be awarded the full amount of its damages of FOUR-HUNDRED, SIXTY-ONE THOUSAND, EIGHT-HUNDRED AND FOURTY-FOUR DOLLARS AND FORTY-SEVEN CENTS ($461,844.47); and
- C. That VT Halter Marine, Inc. be awarded such other relief as it may be entitled to receive under the law or which this Court deems just and appropriate.

This the 7th day of December, 2011.

                                        Respectfully submitted:

                                        /Jonathan Hilbun_____
                                        JONATHAN HILBUN (MS BAR #100124)
                                        ATTORNEY AT LAW
                                        2404 Middlecoff Drive
                                        Gulfport, MS 39507
                                        Telephone:   504.214.0459
                                        Email:          jonathan.hilbun@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via the Case Management/Electronic Case File (CM/ECF) System for the USDC, Southern District of Mississippi, on this 7th day of December, 2011.

                                        /Jonathan Hilbun_____
                                        JONATHAN HILBUN (MS BAR #100124)